**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| MICHAEL HUNTER,<br>        Plaintiff, | |
| v. | No. 3:11-cv-01411 (JAM) |
| RACHAEL ROSS, *et al.*,<br>        Defendants. | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This lawsuit stems from allegations that a police detective in New Haven accessed law enforcement databases for his own personal purposes. After an internal police investigation corroborated a civilian's complaint about this misconduct, the detective—plaintiff Michael Hunter—was arrested and prosecuted for engaging in a computer crime. But the charge was eventually dismissed, and now plaintiff brings this civil suit pursuant to 42 U.S.C. § 1983 against three New Haven police officials—defendants Rachael Ross, Joanne Peterson, and James Lewis— alleging in principal part that they violated his constitutional rights by means of false arrest, malicious prosecution, and selective prosecution.

Defendants have now moved for summary judgment. For the reasons set forth below, I will grant defendants' motion for summary judgment. For two of the defendants, I conclude that no triable issue of fact remains to show that they were personally involved in most of the conduct about which plaintiff complains. Moreover, because arguable probable cause existed to support the arrest and prosecution of plaintiff, defendants are entitled to qualified immunity with respect to plaintiff's claims of false arrest and malicious prosecution. Nor is there a genuine issue of fact remaining to suggest that any of the defendants engaged in selective prosecution on account of plaintiff's race. Lastly, no triable fact issues remain to support plaintiff's state law claim for intentional infliction of emotional distress.

1

**BACKGROUND**

Plaintiff Michael Hunter was a detective for the New Haven Police Department (NHPD) in March 2008, when he was subject to a civilian harassment complaint filed by plaintiff's ex-girlfriend, Sheila Carmon. Among other accusations, Carmon alleged that plaintiff was using his job to launch investigations against people for his own personal reasons and that he would do the same against her. To substantiate this claim, she alleged that plaintiff had once shown her a police record about a criminal conviction of someone named David Austin, who was dating the mother of plaintiff's daughter and whom plaintiff did not like.

The NHPD initiated an internal affairs investigation into several allegations against plaintiff, including whether plaintiff had improperly used a police database—the Connecticut On-Line Law Enforcement Communications Teleprocessing (COLLECT) system—to access criminal records.

Ross was working in the NHPD Internal Values and Ethics Unit, and she took the lead on the investigation. She confirmed that plaintiff had been trained in the COLLECT security policy, which states the following:

> [A]ll information obtained via COLLECT is to be used for criminal justice and law enforcement purposes only. Under no circumstances is COLLECT to be used for personal reasons or curiosity. If you run an inquiry for business reasons, the information obtained cannot be shared with anyone outside criminal justice and law enforcement agencies.

Doc. #40-16 at 5.

Ross also interviewed several people to investigate whether plaintiff had accessed law enforcement records about David Austin and whether he had done so properly. Based on computer records from the COLLECT system and the National Crime Information Center (NCIC), she determined that plaintiff had requested a "State Police Records Check" on David Austin and his brother Richard Austin using "a case number which did not pertain to his request or investigation"; that he had also requested an "Interstate Identification Index" on David Austin; and that he had

2

obtained personal information on both David and Richard Austin "through the New Haven Police in house computer." Doc. #40-16 at 4.

In May 2008, Ross interviewed Sheila Carmon, David Austin, and Richard Austin. Carmon reiterated that in July 2007, plaintiff had showed her a criminal arrest/conviction "rap sheet" for David Austin. Ross confirmed that Carmon had correctly identified the document as a "rap sheet" when Carmon described the document's physical characteristics and related Austin's arrest and probation information. Carmon stated that when she asked plaintiff why he had the rap sheet, plaintiff had responded "that it was personal" and "that he did not like the guy." Doc. #40-8 at 11. When Ross interviewed Austin, Austin confirmed that he had never authorized the New Haven police to conduct a records check on him.

On May 20, 2008, Captain Joanne Peterson, another defendant in this case whom plaintiff identifies as Ross's superior, authored an internal memorandum indicating that although there was "reason to believe that criminal violations had occurred," then-Chief-of-Police Stephanie Redding had "instructed [Peterson] to handle the investigation internally rather than criminally." Doc. #40-15.

Early the next month, Ross interviewed plaintiff, who admitted the following facts: Plaintiff began investigating David Austin after a stranger named Chasmos told plaintiff that David Austin was dealing drugs. Plaintiff did not know Chasmos and had not previously received reliable information from him, but wanted to follow up on the tip anyway because Chasmos accurately identified the mother of plaintiff's daughter and her romantic connection to Austin. Plaintiff used NHPD resources, but he did not document his investigation through official means; he explained that he "didn't wanna put [his] personal stamp on it because it would have seemed more of a personal thing." Doc. #40-12 at 13. Instead, he used an unrelated case number to access the COLLECT database and searched statewide police records for data about David Austin. Plaintiff

3

also ran additional checks on Austin's motor vehicle records and out-of-state criminal records. His searches revealed a New York state arrest record that plaintiff then shared with a federal Drug Enforcement Administration agent, and he suggested that the agent use the information to initiate a federal investigation.

Ross concluded that plaintiff had improperly conducted the COLLECT search for his personal use and that he had improperly shown a printout of Austin's criminal record to Carmon. On September 29, 2008, Ross executed an affidavit to secure a warrant for plaintiff's arrest. The warrant was signed by both an assistant state's attorney and a judge of the Connecticut Superior Court. *See* Doc. #40-16. Plaintiff was subsequently arrested and charged with computer crime in the third degree, although the criminal charges were subsequently dismissed.

In 2011, plaintiff filed this lawsuit against Ross, who was the principal investigator and the affiant on the arrest warrant; against Joanne Peterson, who was a Captain with the NHPD and Ross's supervisor; and against James Lewis, who was the Chief of the NHPD. Plaintiff brings his claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, and selective prosecution, and he also alleges a common law claim of intentional infliction of emotional distress.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be

viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### Constitutional Claims Against Peterson and Lewis

As an initial matter, it is clear that no genuine issue of fact remains as to plaintiff's constitutional claims against Peterson and Lewis. "Section 1983 does not give rise to *respondeat superior* liability," and an employer or supervisor of one who has engaged in constitutional wrongdoing may not be held liable unless the employer or supervisor "was personally a 'direct participant' in the constitutional violation." *Terebesi v. Torreso*, 764 F.3d 217, 233–34 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1842 (2015). Here, it was Ross who investigated plaintiff and served as the affiant for the arrest warrant that was issued for plaintiff, and plaintiff has identified no evidence to show that Peterson or Lewis took part in any actions that plaintiff alleges violated his constitutional rights—namely, his arrest and subsequent prosecution. The fact that Peterson wrote a memorandum in May 2008 suggesting that the investigation *not* be referred for criminal prosecution does not suggest that Peterson bears any responsibility in this case. All of plaintiff's constitutional claims against Peterson and Lewis fail for lack of any genuine issue of fact to suggest that they culpably authorized or otherwise took part in the conduct that is the basis for plaintiff's claims.

### False Arrest and Malicious Prosecution

Claims for false arrest and malicious prosecution brought under § 1983 are intended "to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citations omitted).

Although claims for false arrest and malicious prosecution have somewhat different elements of proof from one another, *see, e.g.*, *Edelman v. Page*, 2015 WL 1395893, at *11–12 (D. Conn. 2015), it is well established that both types of claims require proof that there was no probable cause for an arrest or prosecution. *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013).

The probable cause standard is not particularly demanding. A police officer has probable cause to arrest someone if she has knowledge or reasonably trustworthy information that would suffice to warrant a person of reasonable caution in the belief that the person to be arrested has committed a crime. *See, e.g.*, *Zalaski v. City of Hartford*, 723 F.3d 382, 389–90 (2d Cir. 2013) (internal quotation marks and citations omitted). As the Supreme Court has oft advised, probable cause is "'a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Florida v. Harris*, 133 S.Ct. 1050, 1056 (2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). All that is required for a determination of probable cause is a fair probability of criminal conduct in light of the totality of circumstances. *Id.* at 1055–56.

For cases like this one that involve an arrest warrant affidavit and a claim that the affidavit included false allegations or important omissions, courts may consider whether the allegedly false or omitted information was necessary to the issuing judge's probable cause determination. This is done by hypothesizing a "corrected affidavit"—an affidavit that has been corrected both to rectify any false statements and that includes any omitted information—to determine if the affidavit as corrected would suffice to establish probable cause. *See, e.g.*, *McColley v. Cnty. of Rensselaer*, 740 F.3d 817, 823 (2d Cir. 2014).

Moreover, for purposes of considering whether defendants are entitled to qualified immunity from plaintiff's claims, there need only have been *arguable* probable cause to support a criminal

6

charge against plaintiff. *See, e.g.*, *Betts*, 751 F.3d at 83. "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Zalaski*, 723 F.3d at 390 (internal quotation marks and citation omitted).

Here, there is no genuine issue of fact about the existence of arguable probable cause to support plaintiff's arrest. "A person is guilty of the computer crime of unauthorized access to a computer system when, knowing that he is not authorized to do so, he accesses or causes to be accessed any computer system without authorization." Conn. Gen. Stat. § 53a-251(b). Plaintiff was arrested for computer crime in the third degree, for which the government would be required to prove that he engaged in unauthorized access to a computer system and that "the damage to or the value of the property or computer services exceeds one thousand dollars." Conn. Gen. Stat. Ann. § 53a-254(a). The statute provides that "private personal data," meaning personal data "which a reasonable person would want to keep private and which is protectable under law," § 53a-250(10), has a determined value of $1500. § 53a-259(c).

Ross had substantial evidence to conclude that plaintiff accessed the COLLECT system without authorization and for personal, non-law-enforcement reasons. Plaintiff himself personally supplied most of the information to Ross to indicate that he violated the policy. He admitted that David Austin had been romantically involved with the mother of plaintiff's daughter; that plaintiff received the tip about David Austin from a stranger who had never before supplied reliable information; that plaintiff deliberately avoided creating a paper trail and documenting his supposed investigation of David Austin out of fear that it "would have seemed more of a personal thing," Doc. #40-12 at 13; and that plaintiff had used an unrelated case number to access David Austin's criminal records from the COLLECT system.

Because the Connecticut General Statutes contains an entire section devoted to the "Security

7

and Privacy of Criminal Records," Conn. Gen. Stat. § 54-142g *et seq.*, which sets up special

safeguards for maintenance and disclosure of arrest and probations records, *see, e.g.*, *id.* §§ 54-

142g(a) (defining "criminal history record information" to include records of arrest and correctional

supervision); 54-142i (limiting the circumstances under which criminal history record information

can be accessed or disseminated), it is at least arguable that Austin's criminal records constitute

"private personal data" within the meaning of the computer crime statute, and could therefore be

worth $1,500. *See* Conn. Gen. Stat. §§ 53a-250(10), 53a-259(c). Thus, the information known to

Ross was sufficient for a reasonable person to conclude that plaintiff engaged in an unauthorized-

access computer crime involving property worth more than $1000. *See, e.g.*, *O'Meara v. Terra*,

2012 WL 1575435, at *3 (D. Conn. 2012) (noting that police officer who improperly accesses

motor vehicle records using the COLLECT/NCIC system and shares them would violate

Connecticut's computer crime law, Conn. Gen. Stat. § 53a-254).

    Plaintiff does not identify any factual errors or misstatements in Ross's arrest warrant

affidavit. He contends, instead, that Ross omitted certain information: facts tending to show (1) that

Captain Peterson had "previously engaged in racial discriminatory behavior toward plaintiff," Doc.

#52-1 at 16; (2) that Carmon and the DEA agent were not reliable; (3) that plaintiff had reliable

reasons to suspect that Austin was involved in criminal activity; (4) that other NHPD employees

and officers were disciplined, but not prosecuted, for obtaining criminal record information for

personal use; and (5) that former Chief of Police Redding had instructed Captain Peterson to handle

the investigation of plaintiff internally rather than criminally. *See id.* at 16–22. I have considered

each of these claims and find that no reasonable jury could conclude that the inclusion of any of

these alleged omissions was critical to the existence of probable cause. *See McColley*, 740 F.3d at

823 (noting that "[w]hile the law does not demand that an officer applying for a warrant volunteer

every fact that arguably cuts against the existence of probable cause, he must not omit

8

circumstances that are critical to its evaluation") (internal quotation marks and citation omitted).

In short, defendants are entitled to qualified immunity from plaintiff's false arrest and malicious prosecution claims. No triable issue of fact remains to suggest that they did not have arguable probable cause to accuse plaintiff of committing a computer crime. Accordingly, I will grant summary judgment against plaintiff on his false arrest and malicious prosecution claims.

### Selective Prosecution

Plaintiff also claims that defendants engaged in selective prosecution by pursuing a criminal charge against him despite the fact that numerous other officers of the NHPD had not been criminally charged for similar misuse of the NHPD computer system. A claim of selective enforcement relies on the Equal Protection Clause of the Fourteenth Amendment, which "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). A claim of selective enforcement or selective prosecution arises when the government seeks to apply the law to a plaintiff differently than it would to other similarly situated individuals and for constitutionally impermissible reasons. To prevail on such a claim, a plaintiff must prove that:

> (1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Brown v. City of Syracuse*, 673 F.3d 141, 151–52 (2d Cir. 2012) (alteration in original) (internal quotation marks and citation omitted). A plaintiff may meet his burden with either direct or circumstantial evidence that defendants were motivated by race. *See Grenier v. Stratton*, 44 F. Supp. 3d 197, 205 n.4 (D. Conn. 2014) (indicating that protected-class-based equal protection claim against police officers could be supported by "*direct* evidence of discrimination, such as derogatory comments by police officers about" the class or "*indirect* evidence that might raise an inference of

9

intentional discrimination, such as a pattern of responding differently to violence complaints by" class members).

Plaintiff alleges that he was targeted for arrest and prosecution because of his African American race. But he does not identify any discriminatory incidents involving Ross. And although he complains of discrimination in the NHPD generally, he has not identified specific persons who have engaged in discrimination.[1]

A plaintiff may also satisfy his burden by comparing his treatment to that of other similarly situated individuals of a different race, though the degree of similarity required has been the subject of some disagreement among courts within this Circuit. *See Silano v. Wheeler*, 2015 WL 477179, at *10 (D. Conn. 2015). Some courts have required the level of similarity between a plaintiff and his would-be comparators to be "extremely high." *See, e.g.*, *Peterec v. City of N.Y.*, 2015 WL 1027367, at *5 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). Others have adopted a less rigorous standard, requiring only "'a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' to the extent that an 'objectively identifiable basis for comparability exists.'" *See Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 239 (E.D.N.Y.) (quoting, *inter alia*, *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)), *on reconsideration on other grounds*, 47 F. Supp. 3d 152 (E.D.N.Y. 2014). "At a minimum, a plaintiff must show that he and his comparators 'are similarly situated in all material respects, or that a prudent person looking objectively at the incidents would think them roughly equivalent,' and "that '[d]efendants knew there were similarly situated individuals and consciously applied a different standard to plaintiff.'" *Edelman*, 2015 WL 1395893, at *8 (quoting *Silano*, 2015 WL 477179, at

---

[1] Plaintiff relates a run-in with Peterson at a grocery store that he believes demonstrates her racial animus towards him. But as I discussed above, he has failed to show any facts indicating that Peterson was involved in plaintiff's arrest or prosecution that forms the basis for this lawsuit. Moreover, his anecdote contains no evidence of racial animosity. Plaintiff stated only that Peterson was "targeting" him and continued to "badger" and "come after" him even though plaintiff did not want to speak to her. Doc. #52-2 at 28. At best, this demonstrates only personal animus. Plaintiff could identify no other incidents when he believed that Peterson had harassed him based on his race.

*10; *Peterec*, 2015 WL 1027367, at *5).

Generally, whether people are similarly situated is a factual issue for a jury to resolve, but this rule is not absolute, and summary judgment may be granted if it is clear that no reasonable jury could find that the plaintiff was similarly situated to others who were accorded more favorable treatment. *See, e.g.*, *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790–91 (2d Cir. 2007). Because police and prosecutors have discretion over the decision to institute criminal proceedings just as employers maintain discretion over how to address employee misconduct, I am cognizant of the relevant standards for judging similarly situated comparators in the employment discrimination context—particularly in this somewhat unusual situation where defendants and the NHPD acted in mixed roles as plaintiff's employers, investigators, and arresting officers. *See Missere v. Gross*, 826 F. Supp. 2d 542, 561 n.14 (S.D.N.Y. 2011) (explaining that the "all material respects" standard in selective prosecution cases was adopted from *Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000), which addressed employment discrimination). With that in mind, I consider the standards of conduct to which plaintiff and the comparators were held and the seriousness of their respective offenses. *See Graham*, 230 F.3d at 40; *Estate of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 687 & n.5 (S.D.N.Y. 2004) (discussing the importance of considering standards of behavior in selective prosecution claim comparing actions of student and teacher).

Here, I conclude that no reasonable jury could find that plaintiff was similarly situated in all material respects to any others who engaged in similar conduct known to defendants but who were not prosecuted. To be sure, so far as this record reflects, plaintiff is the only NHPD employee to have been criminally prosecuted for improperly accessing law enforcement computer systems for personal use. Plaintiff identifies five other NHPD employees who engaged in allegedly "comparable conduct" by accessing NHPD computer systems for personal reasons, and who escaped arrest or prosecution: dispatcher assistant Jerrilyn Corr, *see* Doc. #40-18; Sergeant Russell See, *see* Doc.

11

#40-19; Detective Frederick Hurly, *see* Doc. #40-20; Officer Andrea Papa, *see* Doc. #40-21; and Sergeant Jason Koenig, *see* Doc. #40-22.[2] But plaintiff has not pointed to sufficient evidence that these individuals were, in fact, "similarly situated" to him.

First, there is no indication that plaintiff and the comparator employees were judged by the same person. The parties agree that none of the defendants in this case were involved in the decision not to prosecute the other employees' conduct. Although Peterson participated in the investigations of Detective Hurley and Sergeant Koenig, *see* Docs. #40-20 at 3, #40-22 at 3, just like in plaintiff's case, there is no evidence that she was responsible for deciding, or was aware of, the ultimate consequences imposed on the comparators. Plaintiff has presented no evidence that Ross or Lewis was aware of any of the other alleged comparators' conduct, let alone that any of the defendants consciously applied a different standard to plaintiff.[3]

Second, there is no evidence that the records accessed by other comparator employees were used to conduct a search as invasive as that conducted by plaintiff—namely, a multi-district and multi-database criminal records search. The other comparators were reprimanded after accessing motor vehicle information and running a credit check on NHPD local systems only. *See* Docs. #40-18 through #40-22. I cannot conclude that a genuine issue remains to suggest that plaintiff's conduct was "roughly equivalent" to that of the comparators. *Edelman*, 2015 WL 1395893, at *8.

Finally, although plaintiff claims he was treated differently because of his race, he presents no evidence of the comparator employees' race. In any event, mere evidence of a racial disparity

---

[2] I do not consider plaintiff's deposition statements about alleged comparator Lieutenant J.D. Smith because plaintiff admitted that he did not have first-hand knowledge of Lieutenant Smith's conduct. *See* Doc. #52-2 at 122. Accordingly, this evidence is inadmissible hearsay. Fed. R. Ev. 801(c), 802; *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment . . . ." (internal quotation marks and citation omitted)).

[3] I do not consider plaintiff's equal protection argument that he was subject to different employment consequences than the other comparator officers. Plaintiff's complaint brought only a limited equal protection claim of selective prosecution. He did not allege employment discrimination. *Cf. Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).

12

between plaintiff and the comparators, without evidence of discriminatory intent, would not suffice to show that the difference in treatment was based on plaintiff's race. *Brown*, 673 F.3d at 152; *see also Brisbane v. Milano*, 443 F. App'x 593, 595 (2d Cir. 2011) (difference in race between plaintiff and comparators was insufficient evidence to survive summary judgment on selective enforcement claim). And plaintiff has presented nothing more than speculation regarding defendants' intent.

Plaintiff's evidence is not enough to allow a reasonable jury to conclude that he was subject to selective prosecution. Indeed, he has not identified a single comparator to whom a jury could find that he was similarly situated in all material respects, in terms of the severity of his conduct and the individuals responsible for his arrest and prosecution. Even though it is undeniable that plaintiff was the only person who was subject to criminal prosecution for accessing NHPD computer systems for personal use, that fact alone is not enough to sustain his claim, where no evidence shows that defendants had racial animus or gave preferential treatment to others who had engaged in the same kind of conduct as plaintiff but were of a different race. In short, because no triable issue of fact remains to suggest that plaintiff was subject to prosecution because of his race, I will grant summary judgment against plaintiff on his selective enforcement claim.

### *Intentional Infliction of Emotional Distress*

Lastly, plaintiff alleges a state common law claim for intentional infliction of emotional distress. Because this case has progressed all the way through discovery and the facts are the same for this claim as those that I have discussed above with respect to his federal law claims, I will exercise supplemental jurisdiction to consider this remaining claim. *See, e.g.*, *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir.2003) (noting approval of exercise of supplemental jurisdiction where, "by the time the federal claims were dismissed, discovery had been completed, the court had decided three dispositive motions, and the case was ready for trial, and where the state-law claims involved only settled principles, rather than legal questions that were novel").

13

The elements of a claim for intentional infliction of emotional distress are well established:

In order to prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Gillians v. Vivanco–Small*, 128 Conn. App. 207, 211, 15 A.3d 1200 (2011) (internal quotation marks and citation omitted). The standard for what amounts to "extreme and outrageous" conduct is stringent: liability "requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 267, 597 A.2d 807 (1991); *see also Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210–11, 757 A.2d 1059 (2000) (same).

Here, it is readily apparent that no triable issue of fact remains for this emotional distress claim. At least arguable probable cause supported plaintiff's arrest and prosecution. No genuine fact issues suggest that plaintiff was singled out for arrest and prosecution, or for employment consequences, because of his race. No other extenuating facts could warrant a jury verdict in plaintiff's favor on his emotional distress claim.

## CONCLUSION

Defendants' motion for summary judgment (Doc. #40) is GRANTED, and judgment shall enter in their favor on all claims. The Clerk of Court shall dismiss this case.

It is so ordered.

Dated at Bridgeport this 30th day of June 2015.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge